Shute *v.* Taylor

## MICHAEL SHUTE *vs.* ROBERT TAYLOR.

A. bound himself by bond, " in the full and just sum of $ 500, liquidated damages, to convey to B. on demand 3000 feet of land in a city, on the corner of L. and M. Streets, including a certain house and shed, and afterwards, on B.'s demand, executed a deed to him, conveying a lot of land, described by metes and bounds, at the corner of said streets, with the buildings thereon standing : B. accepted the deed, and he and A. agreed that if it was not right, it should be made right : It was afterwards found upon a survey of the land thus conveyed, that it did not include the shed mentioned in the bond, and that it contained only 2513 feet. *Held,* in an action by B. on the bond, that he had not waived his claim for a conveyance of 3000 feet, and that he was entitled to maintain his action without making another demand for a deed. *Held also,* that as B. had accepted a deed in part performance of the bond, the sum of $ 500 was not to be regarded as liquidated damages, but that he was entitled to recover only the actual damages which he had sustained.

THIS was an action of debt on a bond dated April 1st 1841, " in the full and just sum of $ 500, liquidated damages," conditioned that the defendant should convey to the plaintiff, by deed of warranty, " on his request or demand, 3000 feet of land situated in Lowell, on the corner of Lawrence and Middle Streets, beginning at the northeasterly corner of said land, at the corner of said streets ; thence running southerly on Lawrence Street to a line from said street westerly and parallel with said street, and by the southerly side of a dwellinghouse standing thereon ; thence westerly on a line from said street drawn as aforesaid to land late of Henry Fletcher ; thence northerly on said Fletcher's land to Middle Street ; thence easterly on Middle Street to the point of beginning ; with all the buildings situated on and within said described premises, and all for the sum of $ 1300," [to be paid at different times mentioned in the condition of said bond.] At the end of the condition was

this clause : " The buildings on said land mentioned above, that I mean to convey, are a house and shed now occupied by Luther Davis."

The parties submitted the case to the court on the following facts agreed : On the 8th of April 1841, the plaintiff went to Methuen, where the defendant resided, and requested the defendant to convey to him the land described in said bond. A scrivener was called in, a plan was produced by the defendant, and the plaintiff and defendant requested the scrivener "to strike off 3000 feet from the plan, and make a deed according-ly." The scrivener made a deed accordingly, remarking that the plan was old and wrinkled, and there might be a variation from the true quantity ; but that he believed it was right. The deed was read, and the plaintiff and defendant agreed that if it was not right, they would make it right. In this deed, the land was stated to be situate at the intersection of Lawrence and Middle Streets, and was described by metes and bounds, and as " containing 3000 feet by measure, with the buildings thereon standing." The plaintiff received the deed, without any objection, and it was agreed that he should take possession from the 1st of April — the date of said bond. As the plain-tiff stated that "he was going away, to be gone most of the summer, there was an understanding between the parties that when he returned he was to let the defendant know, and they were to get the land surveyed. The object of the survey was not stated. Something was said about fixing bounds, and the witness, who heard the conversation, understood they were to fix the bounds when they should survey."

The shed mentioned in the bond was removed, " about its width," from the defendant's land, and placed upon the land of one Fletcher, in the year 1837 ; and when said deed was given, it was on said Fletcher's land, and was used with the house mentioned in the bond. The nearest part of the shed, after it was removed, and when said deed was given, was about 20 feet from the house, and there was no fence between the shed and the house.

The plaintiff went upon the premises, to examine them, be-

fore the said bond was given ; and the defendant, at the time of giving the bond and the deed, owned land enough on the southerly side of the land described in the deed, to make up the quantity of 3000 feet. The said deed from the defendant to the plaintiff included the house aforesaid, but not the shed ; and the lot on which the shed stood adjoined, on the west, the land included in the deed. The defendant knew, when he executed the bond and the deed, that the shed was not on his land.

The plaintiff sent a written notice to the defendant, requesting him to attend, on the 17th of August 1841, at a survey of the land ; but the defendant, being absent from home, did not receive it in season to attend. The plaintiff afterwards gave the defendant a written notice to attend at a survey, on the 21st of said August ; at which time the defendant went to Lowell, but found that the surveyor, named in said notice, was absent and would not return in season to survey the land. On the 23d of said August, the said surveyor (the defendant being present) made a survey of the land conveyed by the defendant, and found the contents to be 2980 feet, " taking Lawrence Street as it formerly stood." The plaintiff afterwards procured a survey to be made of the same land, by another surveyor, by which it appeared that the quantity of said land was 2513 feet. And it is agreed by the parties that this was the true quantity, " as Lawrence Street now stands."

Lawrence Street was, originally, as it was marked on the plan used by the scrivener when he marked off the 3000 feet on the plan used by him when he wrote the deed ; " and the defendant thought he had complied with the condition of the bond, when he gave the deed, so far as respects the quantity of land." But Lawrence Street was altered by the county commissioners, in 1837, so as to make said last survey correct as to the contents of the land, described in the defendant's deed to the plaintiff.

The plaintiff paid to the defendant the sum mentioned in said bond, at the times therein mentioned ; but he made no demand on the defendant for a deed, besides that which was made when the deed was given on the 8th of April 1841.

It was agreed that the court should render judgment for the plaintiff or for the defendant, as the law on the foregoing facts might require; and that if the plaintiff were entitled to judgment, and the said sum of $ 500 were not liquidated damages, an assessor might be appointed to assess the actual damages.

*H. H. Fuller & Morse,* for the plaintiff.

*Wentworth,* for the defendant.

SHAW, C. J. The first question which arises in the present case is, whether the facts agreed show a breach of the bond declared on. The defendant insists that he has complied with the condition of his obligation, by executing a conveyance of land lying at the corner of Lawrence and Middle Streets, which the plaintiff accepted as and for the conveyance stipulated for in that obligation. But upon comparing the deed, thus given, with the bond, it appears that although the land is described as being at the corner of Lawrence Street, the dimensions, as given, instead of 3000 feet, amount to a little over 2500 feet, and that the conveyance does not include the shed which is one of the buildings contemplated in the obligation to be conveyed. This deed then independent of all evidence as to the fact of execution, delivery and acceptance, would plainly not be a compliance with the obligation. This obligation is peculiar. Sometimes when a deed specifies the number of feet or acres in a tract, or when a bond is given for a deed of a particular lot of land definitely described, and the number of acres or feet is expressed, such description is rather regarded as a second or explanatory description, still further to identify the lot ; and then the number of acres or feet is not regarded as of the essence of the contract. But when land is purchased by the square foot, in a city, and the undertaking is to convey a specified number of feet out of a larger parcel, then the number of feet to be conveyed is of the essence of the contract, and the consideration is to be apportioned accordingly. Taking it in this view, it is very manifest that an actual conveyance of 2513 feet is not a compliance with an agreement to convey 3000 feet.

Then, however, it is contended, that this deed, when accepted, was taken as a full performance, and that any other perform

ance was waived. But whence is this inference drawn ? That the taking of a deed is so far an acceptance, as to vest the estate in the vendee, is obvious ; but how is it to operate as the satisfaction or performance of a particular obligation ? This inference cannot be drawn from the naked, unqualified acceptance of the deed — which is all that is shown. In order then to prove that this deed was in fact accepted as and for a performance of this contract, the defendant is compelled to resort to evidence *aliunde*, and to show what was the purpose of the execution and acceptance of the deed, as declared and under stood at the time. But by a well known rule of law, when evidence *aliunde* is resorted to by one party, the other party has a right to the proof of all that was said and done at the same time. This lets in evidence of all that took place at Methuen, when this deed was given. Upon this evidence, taken all together, it will appear that the acceptance of the deed, so far from being absolute, unqualified and unconditional, was qualified and conditional, and that it was accepted under an agreement, that it was to enure as part satisfaction, or entire satisfaction, as it should or should not turn out, upon a survey to be made, that it was a full compliance. The defendant then agreed to attend such survey, and the statement was, that if it was not right, he would make it right. This, as an agreement or promise to make a further conveyance, would be inoperative and void, under the statute of frauds, because it would be a parol promise to convey lands. This is not the promise, on which the plaintiff does or can rely to maintain an action. But he holds the agreement of the defendant, in a binding form, to convey 3000 feet. The declaration of the defendant, that if not right, he would make it right, affects the external act of acceptance and delivery, and goes to show that that deed was not accepted in full performance, but only in part of performance. It is *res gesta* which qualifies the act of acceptance.

It is now stated that this mistake occurred in consequence of the limits of Lawrence Street having been changed, and a part of the lot, formerly belonging to the defendant, taken into the street, and that the defendant, without adverting to this consid-

6 *

eration, made his deed by a description applicable to the street as it formerly was, but not applicable to the street as it was enlarged and established. But if this was a mistake, it was not one for which the plaintiff was responsible. The obligation of the defendant was executed after the street had been altered and established by the proper officers of the county. He was bound to know, and probably did know of such alteration. At all events, his obligation adopted the corner of the two streets as the starting point, and did apply to the street as it was then established ; and the duty and obligation which he took upon himself was, to execute a deed conformably to the description as thus determined. The deed, as executed, was only a part performance and not a complete execution of such agreement, and the acceptance was a modified and not an absolute acceptance. Therefore the court are of opinion that there was a breach of the bond.

Then an objection is taken, that even supposing the defendant might be bound to a further execution, yet as the effect of his obligation was to perform, by giving a deed on demand, when he had given one deed on demand, that demand was exhausted, and he could not establish a breach without a new demand. There seems to be some plausibility in this point ; but upon consideration, we are of opinion that it is not a valid objection. When once a demand was made, the duty of the defendant to make a complete conveyance, a complete performance of his undertaking, was fixed. It was as much for his interest, and as much his duty, to obtain an accurate survey, as it was that of the defendant. The attempts to meet each other, for a mutual survey, and the failure of those attempts, may have been unfortunate for both parties, but it imposed no new duty on the plaintiff. After one demand for a deed conforming to the obligation, the defendant was bound at his risk to execute such a deed, and no new demand was necessary to establish this obligation.

On the subject of damages, it is insisted for the plaintiff that the $ 500 is stated, in the obligation, to be liquidated damages, and that the plaintiff is entitled to the full amount without any

Shute *v.* Taylor.

apportionment. The question, what is liquidated damages, and what a penalty, is often a difficult one. It is not always the calling of a sum, to be paid for breach of contract, liquidated damages, which makes it so. In general, it is the tendency and preference of the law, to regard a sum, stated to be payable if a contract is not fulfilled, as a penalty and not as liquidated damages ; because then it may be apportioned to the loss actually sustained. But without going at large into the subject, one consideration, we think, is decisive, against recovering the sum in question as liquidated damages, namely, that here there has been a part performance, and an acceptance of such part performance. If the parties intended the sum named to be liquidated damages for the breach of the contract therein expressed, it was for an entire breach. Whether divisible in its nature, or not, it was in fact divided by an offer and acceptance of part performance. It is like the case of an obligation to perform two or more independent acts, with a provision for single liquidated damages for non-performance ; if one is performed, and not the other, it is not a case for the recovery of the liquidated damages. See Chit. Con. (5th Amer. ed.) 863 – 868. *Hoag* v. *Mc Ginnis*, 22 Wend. 163.

Conformably to the agreement of the parties, an assessor may be appointed, to assess the actual damage sustained by the plaintiff.