## J. MONROE TAYLOR, RESPONDENT, v. JOSEPH H. RISLEY, APPELLANT.

28h 141
79 AD¹357

*Contract — one who prevents the performance of it cannot sue for the breach caused by his own act — Stipulated damages — when a sum named in the contract as a forfeit for its breach is to be treated as.*

The defendant agreed to deliver to the plaintiff at Brooklyn a certain quantity of yellow pine timber to be obtained from Fernandina, Florida, or other suitable port. In an action brought by the plaintiff to recover damages for a failure to deliver the lumber the defendant alleged in his answer that being unable to obtain the lumber from Fernandina, by reason of the prevalence of yellow fever there, he entered into negotiations with one Bacon, of Savannah, Georgia, for the purchase of the requisite lumber, and would have succeeded in purchasing and delivering it so as to have made a profit of $500 on his contract but for the interference of the plaintiff. That the plaintiff learning that the defendant was negotiating with Bacon for the lumber, for the purpose of preventing the defendant from purchasing it induced Bacon to decline and refuse to sell it to the defendant, whereby the latter was rendered unable to deliver any portion of the lumber to the plaintiff as he had agreed to do.

*Held,* that the facts stated in the answer would, if proved, have defeated the action, and that the court erred in refusing to allow the defendant to prove them. (BARKER, J., dissenting.)

When a sum of money provided by a contract to be paid as a forfeit upon the breach thereof is to be considered as a penalty and when as liquidated damages, considered by BARKER, J.

APPEAL from a judgment in favor of the plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought upon a written contract for the sale and delivery, by the defendant to the plaintiff, at Brooklyn, of a large quantity of yellow pine timber; the pieces to be in accordance with the schedule attached to the contract, to be used by the plaintiff in the construction of a building for manufacturing purposes. The purpose for which the timber was to be used being clearly indicated in the contract and schedules. The plaintiff's recovery was for the sum of $300 and interest thereon as stipulated damages. The clause in the contract relating to damages was as follows: " The party of the second part agrees to deliver one-half of the required amount of timber on or before the aforesaid twenty-fifth of October, and the balance as soon thereafter as practicable so as not to delay the progress of the work of the building for which the timber is intended; and it is hereby agreed by both parties aforesaid that should the party of the second part not deliver as before called for, that he is to forfeit unto the party of the first part the sum of three hundred dollars as damages unto the party of the first part."

The defendant did not deliver any part of the lumber which he undertook to supply. The exact quantity of timber is not mentioned in the agreement or disclosed by the proofs, but by an inspection of the contract and the schedules it appears that the quantity was between 250,000 and 300,000 feet. The plaintiff gave proof tending to show that he had suffered damages from the non-delivery of the lumber, in an amount largely beyond the sum claimed as stipulated damages. Upon the trial the defendant offered to prove the facts set forth in his third defense, which is set forth in the opinion of Daniels, J.; this evidence was excluded by the court as immaterial, and the defendant excepted.

*John E. Risley,* for the appellant.

*De Witt C. Brown,* for the respondent.

Daniels, J.:

By the judgment from which the appeal has been taken the defendant has been held liable for stipulated damages fixed by a contract entered into between himself and the plaintiff. By the terms of this contract he became obligated to deliver to the plaintiff a cer-

tain quantity of yellow pine timber to be obtained from Fernandina, Florida, or other suitable port. He was unable to obtain it from Fernandina, because of the prevalence of yellow fever at that place, and to excuse himself from liability upon the contract, which he did not in fact perform, he proposed upon the trial to prove all the allegations contained in the third defense stated in the answer. This was objected to as incompetent, and as constituting no defense. The objection was sustained, and to that ruling an exception was taken on behalf of the defendant. This third answer was in the following terms :

That upon the stoppage of the mills at Fernandina, as hereinbefore set forth, he entered into negotiations with one Bacon, of Savannah, Georgia, for the purchase and delivery in Brooklyn to the order of the defendant of certain quantities and descriptions of timber and lumber, which he, the said Bacon then had, and that he would have succeeded in purchasing the same from said Bacon, but for the interference and acts of the plaintiff as hereinafter set forth, and that thereupon and thereby the defendant would have been enabled to deliver, and would have delivered to the plaintiff the timber and lumber in said agreement mentioned within the time therein specified, and would thereby have made a profit out of said transaction of at least $500.

That the plaintiff learning that the said Bacon had said timber and lumber on hand, and that the defendant was negotiating for the purchase of the same, to enable him, the defendant, to comply with the terms of the said agreement between plaintiff and defendant, *for the purpose of preventing the defendant from succeeding in said negotiation, he, the plaintiff, opened negotiations with said Bacon, and so wrought upon said Bacon as to induce him to decline and refuse to sell said timber and lumber to defendant.*

*That by said acts of the plaintiff, defendant was unable to deliver any portion of said timber or lumber to the plaintiff,* on or before the 25th day of October, 1877, and was thereby prevented from making a profit out of said transaction of at least $500, to his damages in the sum of $500, which said sum was due to the defendant at and before the commencement of this action, and which is still unpaid.

By this answer it was alleged, and the defendant proposed to

prove the truth of the allegation, that the plaintiff, for the purpose of preventing him from obtaining the timber at Savannah, entered into negotiations for the purchase of it himself from the person having it, and induced him to decline and refuse to sell such timber and lumber to the defendant. By this interference of the plaintiff he prevented the defendant from performing his contract, and his acts, attended with that result, were stated to have been actuated with the intention of preventing such performance. Under the settled principle of law, which is no more than the principle of fair dealing, this excused the defendant from delivering the timber as he had agreed to by the terms of the contract in the case. The law will not permit a party who has become entitled to the performance of an agreement by another so to intervene as to prevent such performance being made, and then on the basis of such failure to claim damages against the party prevented, because of his omission to perform his agreement. (*Fleming* v. *Gilbert*, 3 Johns., 528, 531; *Stewart* v. *Keteltas*, 36 N. Y., 388, 390; *Dexter* v. *Norton*, 47 N. Y., 62; *Borden* v. *Borden*, 5 Mass., 67; *Marshall* v. *Craig*, 1 Bibb., 379; *Shaw* v. *Hind*, 3 id., 371.)

If the proof offered to be made under this division of the defendant's answer had been received, it would have constituted a legal defense against the plaintiff's claim, for it would have entitled the defendant to the full benefit of this well settled, legal principle. The judgment and order denying the motion for a new trial should, therefore, be reversed and the verdict set aside, and a new trial ordered, with costs to the defendant to abide the event.

BRADY, P. J., concurred.

BARKER, J. (dissenting):

The defendant has not performed his agreement as set forth in the written contract. The plaintiff seeks to recover the damages he has sustained by reason of such non-performance. On the trial he was allowed to recover the sum of $300, as agreed upon by the parties, as the amount of his damages, which he might recover in case the defendant failed to keep and perform the contract on his part. The controversy is, whether the contract, in view of the language used therein on the subject of damages, together with the attending facts and circumstances, manifests the intention of the parties at

the time the agreement was made and concluded, and as a part of the same, to consider and determine the same as liquidated damages.

The law permits parties to agree upon the damages beforehand, which the party in default shall pay; and when the bargain takes the form of a complete agreement, based upon a good consideration, and is free from all fraud on the part of the party who seeks to enforce the stipulation, then this part of the contract is upheld, and specifically enforced in an action at law, by permitting a recovery for the sum mentioned as damages.

Our only duty is to interpret the agreement before us and determine whether it was the intention of the parties to fix upon a sum as the plaintiff's damages, in case the defendant did fail to carry out his agreement. The general rule of law on this subject is stated in *Little et al.* v. *Banks* (85 N. Y., 258), and we intend to adhere to the principles of construction there suggested and apply the same to this case, and not seek to reconcile our own conclusions with many of the reported cases on this subject, as that would seem to be quite impossible.

In the case referred to the opinion states: " The question presented has been the subject of frequent consideration in the courts, and considerable embarrassment has been experienced where contracts contained severe and inequitable provisions, in an effort to reconcile the principles of justice with the well settled rule, that every person has the right to make such a contract as he chooses, and that the courts are bound to enforce it. The difficulty referred to has led to the adoption of the rule that in the construction of such a provision, the actual intention of the parties, so far as it can reasonably and fairly be ascertained from the language of the contract, and from the nature of the surrounding circumstances of the case, is to be considered. (*Colwell* v. *Lawrence*, 38 N. Y., 71; *Cotheal* v. *Talmage*, 9 id., 551; *Noyes* v. *Phillips*, 60 id., 408; *Lampman* v. *Cochran*, 16 id., 273.) This intention cannot be entirely determined by the use of the word ' penalty,' or of the words ' liquidated damages.' (*Colwell* v. *Lawrence, supra ; Staples* v. *Parker*, 41 Barb., 648; *Beale* v. *Hayes,* 5 Sandf., 640.) Nor is the word ' forfeit ' conclusive (*Noyes* v. *Phillips, supra*) as to such intention. It must be arrived at in view of the circumstances of each particular case."

The langugage used by the parties themselves would seem to convey to the common mind that it was their intention and purpose to agree upon a fixed sum which the defendant should pay to the plaintiff if he did not deliver the lumber at the time and place mentioned in the contract.

Their language is, " and it is hereby agreed by both parties, that should the party of the second part not deliver, as before called for, that he is to forfeit unto the party of the first part the sum of three hundred dollars, as damages unto the party of the first part."

This part of the contract is mutual in terms, it relates to the subject of damages, and it is difficult to resist the impression which it makes on the mind, that the defendant was to pay the sum mentioned to the plaintiff, if a breach of the contract occurred on his part. As it has been held by some of the authorities that this language is not necessarily conclusive, as to the real intention of the parties, the nature and character of the contract and the circumstances under which it was to be performed, should also be considered, in seeking to ascertain the mind and purpose of the contracting parties, in inserting a clause of this character in their agreement.

The timber contracted to be delivered under this instrument was to be of particular dimensions, suitable to be used in a building which the plaintiff was constructing. In case of non-performance on the part of the defendant, it would be difficult to ascertain by proof the damages which the plaintiff would sustain. They might be, and were likely to be, much beyond the difference between the contract-price and the market value of the lumber, at the time and place fixed upon for delivery.

As the defendant knew that the timber was to be used by the plaintiff for a special purpose, and that he had made arrangements for its use in a building which he was erecting, the defendant would be liable for special damages arising to the plaintiff, by reason of a non-performance in the delivery, and it would seem that he would be interested and have a motive for having the damages stipulated, and not expose himself to the risk of paying a greater sum, if he failed to perform.

It occurs to us that there is another strong and manifest reason, which would induce the defendant to enter into a contract, fixing the measure of damages, that is the length of time that was to elapse

between the making of the contract and its complete performance, being a period of over two months, he did thus protect himself against the rise in the market, which might have occurred in the intermediate time. The sum mentioned is so small and moderate, in view of the quantity of lumber to be delivered and the aggregate amount of the contract-price therefor, that it indicates very clearly that the parties intended to make it the measure of damages, in this instance, and that it causes no injustice or hardship in taking that view of the contract.

The plaintiff was not a merchant on the market, buying goods to resell for a profit, but a purchaser of material to be used in his own business, and was interested in the prompt and strict performance of the agreement in every particular; and it seems to us to have been a reasonable act of prudence and discretion on his part to exact from the defendant a direct and unequivocal promise that, if he failed to perform his agreement, that he should have a certain sum of money as his indemnity, and not be subjected to the annoyance and uncertainty of producing extraneous proof of the market value of a particular kind of lumber. The slightest advance in the market value of the lumber would be greater than the sum stipulated as damages.

In this case, we find that the attending facts and circumstances are of the same nature and character as those which are usually taken by the courts as indicating that the language used by the parties in the contract was with the intention of fixing and determining the damages in case of non-performance. (*Little et al.* v. *Banks, supra; Noyes* v. *Phillips,* Id.)

Unless it is held that the clause in relation to damages was inserted by the parties with the intention and for the purpose claimed by the plaintiff, then the provision is wholly without effect and serves no purpose as a protection to the defendant in limiting the amount of the recovery which might be had against him in an action upon the contract for non-performance.

If the sum stated should be held to be a penalty only, it being inserted in an agreement between the parties themselves and relating wholly to their own obligations, the plaintiff would have a right of election, in case of non-performance by the defendant, as to the nature of the action he would prosecute. He could disregard the

penalty and sue for a breach of the contract, and in such an action would be at liberty to recover all the damages he could prove he had sustained, although the amount should exceed the sum named as a penalty. Parties are not released from performing their agreement by inserting a penalty for non-performance, when mentioned in an agreement of this character. (*Noyes* v. *Phillips*, 60 N. Y., 408; *Harrison* v. *Wright*, 13 East, 343; *Thompson* v. *Rose*, 8 Cow., 266.) In the latter case it was held that a party suing for damages was not limited to the penal sum mentioned in contracts of this nature, but that the principle applied only in cases of surety and bonds conditioned for the payment of money only.

Therefore, parties having a right of action upon contracts of this character generally elect to sue for a breach of the contract and recover all the damages that they are entitled to by the rules of law and do not count for the penalty, for if a resort should be made to that form of action they would be limited in the amount of recovery to the penalty, and also be required to prove the damages sustained, which could not exceed the amount of the penalty.

The defendant offered to prove that immediately after entering into the contract the defendant contracted with a party in Fernandina to manufacture the lumber called for by the contract, and engaged suitable vessels to transport the same to the city of New York, and that after a portion of the lumber was sawed and ready for shipment yellow fever broke out in the city of Fernandina and the manufacturer and all his hands were stricken down with that disease, and work was suspended and the port of Fernandina closed so as to prevent the shipment of lumber from that port to New York until the middle of November. The evidence offered was objected to, the objection sustained and the defendant excepted. The defendant insists that these facts and circumstances excuse his non-performance and is a bar to the plaintiff's recovery.

As the contract was not in terms for the sale and delivery of particular lumber then in existence, but the same was to be thereafter manufactured, and the defendant was not required to furnish the same when manufactured from Fernandina, or any other particular port, the causes of non-performance suggested in the offer furnish no excuse to the defendant for a breach of his contract. (*Booth* v.

*Spuyten D. R. Mill Co.*, 60 N. Y., 487; *Harmony* v. *Bingham*, 12 id., 99; *Tompkins* v. *Dudley*, 25 id., 272.)

The defendant seeks to be relieved from a performance of his contract, because the plaintiff interfered with its execution as set forth in his third answer. It is not pretended that the plaintiff has done, or omitted to do, any act which is in violation of any of the terms of the contract, either express or implied.

In support of his argument on this question he relies on the general precept of the law, which is applicable in all cases whatever, that a promisor will be discharged from all liability when the non-performance of his obligation is caused by the act or fault of the other contracting party. (2 Pars. on Con., 676.)

This proposition would be available to the defendant as a defense to a recovery, if the plaintiff has done any act of an unlawful or wrongful character which is actionable in and of itself, having the direct and natural effect of preventing or interfering with the performance of the contract on the part of the defendant, such as destroying lumber belonging to the defendant suitable to be delivered under the contract, and intended so to be, or destroying the mills at which the timber was to be manufactured, or the vessels in which it was designed to transport the same. Such acts and interferences on the part of the plaintiff would prevent him from maintaining an action based upon the defendants non-performance.

But mere misbehavior on the part of the plaintiff, and censurable conduct, not wrongful and actionable in the eyes of the law, and which among fair-minded men is regarded as an interference in the business of others, exhibiting ill feeling and indicating an unfriendly spirit, cannot be inquired into, and made an excuse for the non-performance of the engagements of the contracting party so disturbed and annoyed. Such we regard to be the nature and character of the plaintiff's acts of interference as set forth in the answer, and which the defendant offered to prove. For aught that was averred, the things said and done were truthful and proper things for the plaintiff to say and do under the circumstances.

It is averred that the plaintiff did interfere with the making and concluding of a bargain between the defendant and Bacon, the lumber merchant of Savannah, with the intention on his part of preventing the defendant's being able to execute his contract and

deliver the lumber as agreed. This would not constitute a defense, unless the act of interference was such as could be denominated wrongful and actionable in law. For the plaintiff could, without furnishing an excuse to the defendant, for non-performing his contract, have entered the market in Savannah and negotiated with lumber merchants for the same material that the plaintiff contemplated purchasing, and conclude a bargain in his own behalf, although his intentions were to annoy and prevent the defendant from executing the contract, yet it would not relieve him from that obligation. As the defendant limited his offer to proving the facts set up in this connection in his answer, there was no error in overruling the same.

The questions which we have considered embrace all the allegations of error set forth in the bill of exceptions.

The judgment and order appealed from should be affirmed, with costs.

Judgment reversed, new trial ordered, costs to abide the event.