SMALL v. BURKE et al.

(Supreme Court, Appellate Division, First Department. March 11, 1904.)

1. BUILDING CONTRACTS—DELAY—PENALTIES—EXTRA WORK.
    Where a building was erected under a contract providing a penalty for delay, and declaring that, should the owner at any time during the progress of the work request alterations, such alterations should not affect or make the contract void, but should be added to or deducted from the amount of the contract, at a fair and reasonable valuation, the alteration clause did not bind the contractor to finish the buildings within the time specified, or pay the penalty for delay caused solely by the making of alterations.

2. SAME—EXTENSION OF TIME.
    Where a building contract authorized the owner to order alterations, additions, etc., and provided a penalty for delay, the contractor was entitled, in determining the extent of the delay, to be allowed for the time that the final completion of the contract work was necessarily delayed by the changes so ordered.

3. SAME—NEW TRIAL.
    Where, under the undisputed evidence, a building contractor was entitled to have deducted a large part of, if not the entire, delay for which a penalty had been charged by the trial court, from which judgment the contractor appealed, a new trial is required, since the Appellate Division has no jurisdiction to make findings of fact.

4. SAME—PENALTY.
    Where a contract for the construction of buildings to be rented provided a "penalty" for delay, and there was nothing to show that the parties intended the amount specified as liquidated damages, and the actual damages were susceptible of proof, the court could not take judicial notice that the rental value would amount approximately to the sum specified as a penalty, but the burden was on the owner to show such fact, in order to enforce the penalty.

---

¶ 2. See Contracts, vol. 11, Cent. Dig. § 1379

Appeal from Special Term, New York County.

Action by Fenwick B. Small, as trustee, etc., against Luke A. Burke and others. From a judgment in favor of plaintiff, defendant Burke appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

William F. Kimber, for appellant.

Will. Man, for respondent.

LAUGHLIN, J. The action was brought to foreclose a mechanic's lien. The controversy on the appeal is between defendants. The appellant was the general contractor, and the respondent, Wetmore, is the owner of the premises. The appellant filed a lien which has been sustained to the extent of $211.68, with interest. In arriving at this balance, the court has deducted from the contract price of the work and the value of extra work the sum of $363.20 for defective work, · and the further sum of $1,550 as a penalty for failure to complete the work within the stipulated time. The appellant contends that these deductions should not have been made, and these are the only questions presented by the appeal.

The contract was in writing, and it was executed on the 13th day of August in the year 1900. The contractor agreed to erect, pursuant to drawings and specifications thereto annexed, three buildings to be known as Nos. 314, 316, and 318 West Forty-Second Street, "on or before the expiration of 72 working days * * * under a penalty of twenty five dollars per day for each day thereafter." On the 19th of February, 1901, the owner, through the architect, at the suggestion of the appellant, accepted the buildings, without prejudice to his rights under the contract, the contractor agreeing, on demand, to do any further work requested "to meet the requirements of the specifications and contract." The trial court found that between the expiration of the 72 working days allowed by the contract for the completion of the work, and the 19th day of February, when it was conditionally accepted, there elapsed 62 additional working days; that the delay of these 62 days was unexcused; and that the owner was entitled to the penalty prescribed in the contract therefor. The appellant contended upon the trial, and gave evidence tending to show, that the owner was responsible for a considerable part, if not all, of this delay; and that for the most part it was caused by extra work and alterations ordered by the owner, pursuant to a provision of the contract reserving to him that right. Counsel for the owner contended upon the appeal, and evidently claimed upon the trial, that the entire work, including any extra work that might be ordered under the contract, was required to be performed within the time specified, and that the penalty clause of the contract applied to any additional time required for completion. This claim is based on paragraph 3 of the contract, which is as follows:

"Should the owner at any time during the progress of the said buildings request any alterations, deviations, additions, or omission from the said contract, he shall be at liberty to do so, and the same shall in no way affect or make void the contract, but will be added to or deducted from the amount of the contract, as the same may be, by a fair and reasonable valuation."

We are of opinion that the clause to the effect that omissions, alterations, or additional work "shall in no way affect or make void the contract," does not require, and should not receive, the construction for which the respondent contends. Clearly the parties intended that changes and alterations should not annul the remaining part of the contract; but it was not contemplated that the owner was to be at liberty to require a substitution of material or other change in the work which would necessarily delay the remaining work covered by the original contract, and that the contractor was to take the risk of such delay, and be obligated, notwithstanding it, to perform the contract work within 72 working days. The rule in such case is that the contractor is to be allowed for the time that the final completion of the contract work is necessarily delayed by any changes, alterations, or omissions ordered by the owner. This construction of the contract was not adopted on the trial.

In arriving at the number of days for which the contractor was liable for the penalty, no deduction was made for delays for which the owner was responsible, and it appears by uncontradicted evidence that the owner was responsible for a great number of days' delay. The only deductions made were for Sundays, holidays, and days upon which storms required the suspension of work.

During the progress of the work the owner determined to wire the building for electric light. According to the testimony of the contractor, he was ready to proceed with the plastering on the 17th day of November, but deferred doing so, at the instance of the architect, to enable the owner to determine whether he wished to wire the premises for electric light; that subsequently the owner determined in the affirmative; and that this delayed the work of plastering for "three or four weeks," or from the "17th day of November until after Christmas." This testimony is not expressly controverted. The architect concedes that wiring the building for electric light took 11 days, but he does not say whether this delayed the plastering, or how long. The architect, also, during the progress of the work, determined to substitute iron girders for certain wooden posts specified in the contract, at the agreed extra compensation of $150. The contractor testified that this delayed the entire work 10 days, and the architect concedes that it delayed it three days. The contractor was also directed to depart from the requirements of the contract with reference to the arrangement of the front steps descending into the area or basement. He says that this delayed the work three or four days, but the architect admits that the delay was six days. There was certain rock excavation which the parties agreed was extra work. The contractor testified that this caused a delay of 12 days, and the architect concedes a delay of 3 days. The contractor testified that the work was delayed three weeks on account of the failure of the owner to decide on the color of paint to be used on the buildings, and the architect concedes a delay of four days through this cause. The contractor testified that, according to the original plans with reference to which the contract was made, the foundation wall at one side was not to be constructed as low as the bottom of the cellar, but that the building department required a further excavation, and that the foundation wall be carried down to the level of the bottom

of the cellar, and that the wall upon adjacent premises be underpinned; and that this caused a delay of one month. The owner's architect testified, concerning this, that on September 20th a violation was filed by the building department, which "it took nine days to get rid of."

The respondent claims that, by paragraph 12 of the contract, which provides that the contractor shall, at his own expense, "comply with all sanitary laws, ordinances and rules, and all other orders of the board of health or other authorities affecting the cleanliness, safety, occupation and use of the said premises, and the sidewalk and the street in front of the same," the appellant assumed the risk of delays arising from violations of the building laws and ordinances. We are of opinion that this provision of the contract must be limited to the work which the contractor undertook to perform, and that, as between him and the owner, he did not become an insurer of the sufficiency of the plans, or assume any responsibility for delays caused by the interference of the authorities owing to the fact that the plans and specifications had not been prepared in accordance with law, or in conformity to the lawful requirements of the local authorities. These delays all occurred before the conditional acceptance of the buildings by the owner, and many of them occurred during the first 72 working days after the contract was executed. According to the undisputed evidence, the contractor was entitled to have deducted a large part of, if not the entire, 62 days, for which he has been charged with the penalty. We cannot, however, make findings of fact, and therefore a new trial must be granted.

It was evidently assumed on the trial that the $25 for each day's delay in completing the work, designated in the contract as a "penalty," was intended as liquidated damages. There is no provision of the contract, other than those quoted, which sheds any light on this question. Equity does not enforce penalties. This was undoubtedly a proper case for the parties, by an appropriate liquidated damage clause, to stipulate the damages that should be paid upon a failure to complete the work within the time specified. Ward v. Hudson River Building Co., 125 N. Y. 230, 26 N. E. 256; Curtis v. Van Bergh, 161 N. Y. 47, 55 N. E. 398. Presumptively, however, where the parties unqualifiedly specify a forfeiture as a penalty, it was their intention that the amount specified should be a penalty or security for the actual damages, and not liquidated damages. Colwell v. Lawrence, 38 N. Y. 71; Parsons on Contracts, vol. 3, pp. 157, 159; Cæsar v. Rubinson, 174 N. Y. 492, 67 N. E. 58. The fact that the amount is specified as a penalty for each day's delay is some evidence, perhaps, that it was intended as damages. Tayloe v. Sandiford, 7 Wheat. 13, 5 L. Ed. 384. If there had been no delay for which the owner was responsible, the contractor should have completed these buildings early in December. It is to be inferred from the evidence that they were constructed for the purpose of renting. In these circumstances, the damages would ordinarily be the loss of the use or rental value of the premises. We cannot take judicial notice as to what that rental value is, or that it would amount approximately to the sum specified as a penalty. If it approximated the amount of the penalty, it would be fair to assume that, although specified as a penalty, it was intended

as damages; but the burden of showing this was on the owner. Tayloe v. Sandiford, supra; Richards v. Edick, 17 Barb. 260–266; Laurea v. Bernauer, 33 Hun, 307. We think, therefore, the owner, if he expects to have the amount specified as a penalty treated as liquidated damages, should have shown the rental value of the premises, and that this would have been competent evidence. The case in this regard is distinguishable from Liotta v. Abruzzo, 82 App. Div. 429, 81 N. Y. Supp. 877, where, although the amount was specified as a penalty, it was clear that it was intended as liquidated damages; and in that case, but for such construction, only nominal damages could have been recovered, whereas here substantial damages could be shown and recovered for the breach of the contract, without any liquidated damage agreement. Cæsar v. Rubinson, supra.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.